Gieeen, J.
These cases have been consolidate^ and proceed under the title of the latter case, and are now in this court on appeal.
The object sought in the cases is to enjoin the Lower River Road Company from collecting the tolls upon the road now operated by them, and to compel the county commissioners to again take possession of the road and operate it according to law.
Perhaps it would be well to give the history of the road. The road was, by special act in 1850, placed in the hands of the county commissioners, under the act to provise for the extension of the Lower River Road in Delhi and Miami townships, Hamilton county, Ohio. And in this *-ct some of the provisions of the Carthage Road law are embodied. Subsequently, in 1857, as amended in 1859, the commissioners were empowered to surrender the road to the bondholders, the road having been improved by the county commissioners by the issuance of bonds which were to be paid only by the tolls collected from the road.
It is urged, first, “That the bond-holders of said road did not become an incorporated company under the laws of Ohio, and that the provisions of said statute of April 15, 1857, that the said company should become incorporated as-therein provided, and whereby the said company could be compelled to keep said road in repair, were an essential-element in the provisions, for the surrender of said road that *664 said provisions as to the incorporation and the obligations to repair which would thereby be enforceable against said company, have failed, and that the said contract with said provisions eliminated is in contravention of law.”
In answer to that, it may be said that the contract does not require that the bond-holders be incorporated. The contract made between the county commissioners and those representing the road, who were the bond-holders, contained a provision that they may become incorporated according to the act of 1852, so far as it relates to plank road and turnpike companies.
It is argued, on the other hand, that the road, while it may not, under these acts, have become a corporation de jure, is a corporation defacto. And there is much force in this contention. For, in deciding the case of the Lower River Road Company against the Village of Riverside, 25 Ohio St., 658, the supreme court left that question in doubt, but seem to recognize the fact that .the Lower River Road Company was a corporation, and, parenthetically announced that it might be questionable whether, under this species of legislation, they could have become a corporation.
Inasmuch as the contract does not .require that they become incorporated, we do not deem it essential, in this case, to determine whether, or not, they are a corporation, even de facto.
That Carthage Road act, which is made part, in some respects, of the act of 1850, pertaining to the Lower River Road, has this provision:
‘‘That the said commissioners shall employ or appoint such agents or persons to make repairs of said road and keep the gates and collect tolls at such salaries and on such terms as shall be deemed advisable by said commissioners.”
Now, in the case referred to, in the 25 Ohio State Reports, on page 658, the court has held that the corporation, if it be one, is the agent or trustee of the county commissioners. And, being the agent or trustee of the county commissioners, they stand in no different relation than that provided before, in the Carthage Road act, that the commissioners shall select such agent as it may deem advisable.
The contract, in this case, was made, as I said, with the *665 bond-holders. The corporation was formed, if at all, subsequent to the execution of the contract. So that the corporation, or the association representing the bond-holders, whichever you may choose to call them, is acting simply as the agent or trustee of the county commissioners, as they were already authorized to do under the Carthage Road aot and the act of 1850, each of which is admitted to be constitutional. And the act of 1857, may be open to the objection that it pertains to a general subject matter, and, therefore, does not have uniform operation throughout the state’.
It may be said, however, in passing, that all of this class of legislation, up to the time of the decision of the Hixson v. Burson case, in 54 Ohio State, 470, had been regarded as constitutional, and had been so held in the case of the state of Ohio on the relation of Hibbs against the commissioners, 85 Ohio St., 458, and it was only after the decision of Hixson against Burson that this case was overruled.
So that it might be said that this class of legislation being recognized, at that time, by our supreme court as constitutional, an attempt to form a corporation under that law, at that time, should now, rights having vested, be recognized as at least a corporation de facto. But as it will be unnecessary to decide the question in this case, we leave it as did Judge Mcllvaine in the case of the Lower River Road Company v. the Village of Riverside, supra.
There has been recently another principle announced, in the case of The City of Cincinnati v. Charles P. Taft et al., 63 Ohio St., 141, the syllabus of which is as follows:
“An act of the general assembly to authorize a municipality to issue bonds for the construction of a public improvement having been adjudged by this court to be constitutionally valid, and the bonds having been thereafter sold and the improvement made, the court will follow the former decision as to the validity of supplementary acts relating to the renewal or extension of such bonds,’’
If we are right in our statement, therefore, that the commissioners were authorized, under the constitutional act of 1850, to employ such agents as they might deem proper, to operate and control the road, that this act of 1857, which seeks, in a limited sense, merely to do the same thing, is supplementary, or enabling, in its operation, to the origin *666 al act of 1850. It does not seek to do more than that authorized in Carthage Road act, but, rather, attempts to limit it to a certain class of agents, rather than to agents generally,
We think, therefore, that, while the case does not come directly under the Cincinnati v. Taft case, the same principle applies and that the act of 1857, so far as it enables the county commissioners merely to do that which they were authorized to do under the constitutional act, would confer that power, although the act of 1857, standing alone and independent, would be declared unconstitutional, under the decision in Hixson v. Burson.
The next objection is that the transfer of a portion of the roadway by the Extension of The Lower River Road Company to the Cincinnati & Indiana Railroad Company was in violation of the contract of surrender,
The Railroad Company and the Turnpike Company becume involved in a dispute as to the line dividing their properties; and some of the testimony tends to show that The Lower River Road Company surrendered a strip of ground the entire length of the pike, two feet in width, to the railroad company, in consideration whereof the railroad company surrendered to the turnpike company $1600 of the bonds issued by the county commissioners, which were payable from the collection of tolls. Mr. Moore, whose testimony is relied upon to this effect, testified that the canal bed, which constituted the right of way of the railroad company, was 63 feet in width; and this contract between the railroad company and the turnpike company provides that the lin9 shall be 31-|- feet from the middle line of the old canal; which would be precisely half of that which Mr.Moore says was the actual width of the canal, including the berme bank, tow path and the bed thereof. So that his testimony is not, by any means, conclusive as showing that there was an actual surrender of two feet of ground to the railroad company. It is true that this contract ■ does not vest any property right in the bond-holders and they would be unauthorized to deal with the lánd constituting the turnpike as their property. But we feel it may be fairly stated that it was not a surrender of any ground, but was an adjustment of the boundary line that was a very beneficial traDS *667 action; and that if the county commissioners claim the benefit of the surrender of the bonds, they would thereby be compelled to accept the other terms of the contract, And, of course, we shall hold that, having dealt with this property as owner, and representing the county commissioners as agents, that whatever rights they acquired in the bonds would inure to the county commissioners, and such bonds as were received in consideration of the adjustment of this boundary line should be considered as canceled. And although an attempt was made io reissue $1000 of these bonds subsequently to their surrender to the turnpike company, it would have been unavailing.
Third, that the action of the extension of the Lower River Road Company in making a lease to the village of Riverside of so much of the road as was within the corporate limits of said village, was in violation of the contract of surrender.
This was the contract entered into between the village of Riverside and the company whereby they were to pay an annual rental of $600, and,in consideration of that payment, the residents of the village were exempt from paying toll, and the turnpike company was enjoined from collecting toll upon any part of the turnpike within the village, and the. $600 was to be applied to the improvement of any portion of the turnpike road,
Were it not for the fact that it might be held that this corporation was not a corporation in fact, section 3492 of the Revised Statutes would apply, and which would fully authorize the company to enter into such a contract with the village of Riverside But, if not a corporation, perhaps that statute would not apply to this case. But we think that in doing as they did they made a very beneficial contract, and it amounted simply to the collection of toll for that part of the road, to the extent of $600 per annum, in a way different from the ordinary way of collecting tolls, and it was not in violation of the contract entered into between the commissioners and the bondholders.
The other grounds may be embraced in the one head,that the bond-holders have not performed the contract, in that they have not kept the road in good repair.
*668 We do not find, in this contract, or in the lease upon which it was founded, that any high standard is laid down for the keeping of this road in repair; and that the terms of "the contract merely provide that the road shall be kept in reasonably good repair. And, while we will not undertake to analyze the testimony, which is very voluminous, we think that, under the circumstances, the bond-holders being limited by the amount of the toll,the object of the contract being not only to keep the road in repair and to serve the public in that regard, but to pay the bonds, or, at least, the interest thereon, that the turnpike company has kept the road in such reasonable repair as could be expected under the circumstances of the case, The tolls received perhaps averaged $2200 to $2300, perhaps $2400 or $2500; and the greater part of this has been expended upon the repair of the road, or in paying the salary of the secretary and treasurer, And upon this payment much of the controvers depends, Of course, it was not intended, by the terms of this contract, that the bond holders, or any of the officers of this company to be afterwards formed, should acquire any considerable salary for the management of the road. But the repair of the road could not have been intelligently done without some direction from the officers of the company, The mere placing of the metal upon the road and the ordinary manual-labor expended in doing so, was not what would ordinarily result in the repair and maintenance of a good, fair road, We think, therefore, that at least part of the salary allowed for a secretary and treasurer, when his duties also required him to superintend the repair of the road, was properly expended as a part of the repairs of the road. And the receipts and expenditures could not be accounted for honestly and faithfully without some supervision from one of the officers of the road. The salary allowed for this purpose was $600 a year. We think that, in view of all the circumstances of the case, this was extravagant; it would not be under ordinary circumstances, but under those in this case, we think that one half of that salary should be approved,,and the other half be applied to the payment of the interest upon the bonds.
As to the $4600 of bonds surrendered to the turnpike company by the railroad company, we think that they should be *669 cancelled as of the date of the transaction between the turnpike company and the railroad company.
John JR. Sayler Oliver B. Jones, County Solicitor and Charles Evans, for Plaintiffs.
Aaron A. Ferris and H. JD. Peek, for Lower River Road Company.
We think that the costs should be divided equally between the county commissioners and the turnpike company.